DAKOTA CENTRAL TELEPHONE COMPANY, Appellant, v. SPINK COUNTY POWER COMPANY, Respondent.

(176 N. W. 143.)

(File No. 4557.    Opinion filed January 30, 1920.    Rehearing denied March 26, 1920.)

1.  **Telegraphs and Telephones—Electric Power—Electrical Interference of Two Systems—Conduction, Induction, Interference By, Defined, How Overcome—Evidence.**

    The evidence shows that electrical interference between the telephone line in question using a low-tension current of electricity with the earth as a return circuit, and an electric power and light company, using a high tension current, arising by conduction, and by static magnetic induction; that interference by conduction may be practically eliminated by the proper erection and maintenance of a power line; that interference by static induction may be overcome by proper balance of the electrical current in the power line.

2.  **Same—Telephone Line, Prior Highway Occupant, Electric Power Company, Later Occupant—Electrical Interference, Which Company Must Eliminate.**

    Where a telephone company, using a low-tension current of electricity with the earth as return circuit, the earliest occupant of a highway, is electrically interfered with by an electric power and light plant, later occupant thereof, the power company must eliminate interference by conduction and by static induction.

3.  **Electricity—Power—Electric Transmission Plant—Electric-magnetic Induction, Defined—Electro Power Interference With Telephone Line, How Prevented—Mutual Electric Circuits, Remedy Re—Earth Return Telephone Line, Effect Re.**

    Electro-magnetic induction is the transmission of electricity from one electric circuit to another by means of an electric fluid; which kind of interference may be prevented by co-ordinated transposition of wires on both systems; but, the evidence showing this may be accomplished where electric circuits on both systems are metallic, the remedy is inapplicable to an earth return telephone line.

4.  Telephones—Line on Highway, Interference With By Highway
    Electric Power Current—Statutory Sources of Telephone, Elec-
    tric Power, Rights—Priority of Telephone Rights—Evidence
    Re Electric Interference.

    Plaintiff's right to use of the highway for its telephone line
arose under Sec. 554, Rev. Civ. Code 1913 (Sec. 9791, Rev.
Code 1919) providing for use by telegraph, etc., lines right of
way over certain realty including highways, it having been in
operation since about 1910; while defendants' right to use
of the highway for its plant arose under Laws 1913, Ch. 369,
(Rev. Code 1919, Sec. 8591-4), which latter chapter contains
the proviso "that such transmission line shall not interfere
with the service of any telephone or telegraph lines already
constructed on such highway." Under the evidence, it appears
that, notwithstanding the lines of respective parties are on
opposite sides of the highway, the clear preponderance of
evidence shows that by reason of electro-magnetic induction
the service of plaintiffs' telegraph line is and will continue
to be substantially interfered with.

5.  Highways—Rural Highways, Use for Light, Power, Transmission,
    Highway Dedication Subject To, Presumption Re Present,
    Prospective Uses.

    When land is taken or dedicated for use as a highway, such
taking or dedication should be presumed to be not merely for
purposes and usages known and in vogue at time of dedication,
but also for all public purposes, present and prospective, then
known or unknown consistent with character of the highway
and not detrimental to abutting realty; including use of rural
highways for light and power transmission, whether for light-
ing highways or otherwise.

6.  Telephone—Highway Earth-return Line, Interference With By
    Electric Power Line Current—Rule "Sic Utere Tuo," Whether
    Limiting Telephone Rights—Statute, Constitution, Construed—
    Non-statutory Rights Under the Rule "Sic Utere Tuo," Etc.

    Under Rev. Code 1919, Sec. 45, plaintiff, owner and operator
of a rural telephone line with earth as return circuit, is not
bound to abandon the use of the earth as return circuit and at
its own expense install a metallic circuit on lines interfered
with by defendant owner of an electro-magnetic power line op-
erating on the opposite side of the highway, and which inter-
feres with plaintiff's line by electro-magnetic conduction and
static induction; and if the Legislature had so declared by
enactment, no constitutional principle would have been there-
by violated. So held, construing the relative rights of the
parties under Sec. 9791, Rev. Code 1919, governing plaintiff's
rights, and Sec. 8591-4, governing defendant's rights under

said Sec. 45, which rule would likewise obtain in the absence of statutory provision.

7. **Telegraphs and Telephones—Statutory Non-interference With Prior Line Service, Presumption Re, Legislative Intent Re—Expense of Remedying Interference, Who Shall Bear.**

In enacting Laws 1913, Ch. 369 (Secs. 8591-4, Rev. Code 1919), containing a proviso against interference by electric power transmission lines with previously constructed telephone, etc., lines, on highways, it will be presumed the Legislature knew of the extensive occupancy of highways by rural telephone lines using earth as return circuit; that the manifest legislative intent was to protect telegraph and telephone lines previously constructed from interference with their service; any other interpretation would merely protect them from negligence of power and light companies, a protection they already had; that, contrariwise, it was not the legislative intent to exclude the latter lines from the occupied highways, providing a remedy could be found by changes or improvements in either system; and if plaintiff telephone company must bear expense of changing its system to a metallic return circuit, it has not been protected in its right under that statute; whereas if such expense is borne by the power and light company, plaintiff company cannot justly say it is not protected in its right by earlier occupancy; defendant should therefore bear such expense.

8. **Same—Previously Constructed Telephone Line, Protection of From Faulty Construction, Maintenance, By Power Company—Negligence—Statute Re.**

Held, further, that it necessarily follows that under said proviso there must be proper construction and maintenance of a subsequently-erected power plant, and if there be faulty construction or maintenance, such defects must be remedied at expense of the power line; since the Legislature did not intend to encourage negligence.

9. **Same—Whether Previously Constructed Telephone Line Owner Must Yield Right, Submit to Inconvenience, Contention Re Dissented From—Injunctional Power Re Interference.**

The contention, by defendant power company, that plaintiffs' previously constructed line must, as between it and defendants' line, yield the prior right and submit to damage and inconvenience to some extent, "for the good of his neighbor and for society," might be recognized, had not the Legislature by said proviso established a different rule, which the courts cannot change or ignore; nor does enforcement of the statutory rule bar later transmission lines from using the highways, thus denying them a statutory right; since the rights of both parties to occupancy must be assumed, and such construction

given the statute, as will enable both to use the highway; this being effected by placing on later transmission line burden of removing interference by every scientific means, and by holding the telegraph and telephone lines must allow such changes in their lines at expense of the power transmission line as necessary to remove interference resulting from construction and use of its line. The court's power to so frame its injunctional order as to accomplish this purpose is unquestionabe.

10.   Injunction—Highway Telephone Line, Enjoining Interference With By Electro-Magnetic Power Line—Right to Injunction— Injunction Denied, Right to Money Compensation Through Equity Court.

Where it appears in complaint that plaintiff's telephone line constructed upon a highway in 1910 and using the earth for return circuit, was materially interfered with in its operation and maintenance by electro-magnetic induction of the telephone lines by defendant's low-tension electric power and light plant recently constructed upon the opposite side of the rural highway, plaintiff was at time of commencement of the action entitled to injunction against such interference. Held, further, the injunction having been denied, and the question now being one of dollars, plaintiff-appellant should not have been limited to his remedy at law, since a court of equity having assumed jurisdiction, is authorized to determine the question of dollars. Whiting, J., dissenting.

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by Dakota Central Telephone Company, a corporation, against the Spink County Power Company, a corporation, to enjoin defendant from interfering through electro-magnetic induction from its power plant with plaintiff's telephone lines, and for other relief. From a judgment for defendant, plaintiff appeals. Reversed, and remanded for further proceedings under instructions.

*Null & Royhl*, for Appellant.
*Morris & Moriarty*, for Respondent.

(10) To point ten, Appellant cited: Tri-County Mutual Tel. Co. v. Bridgewater Power Co. (S. D.), 167 N. W. 501; 90 Ohio St. 144-100 N. E. 970; Cumberland Telegraph Co. v. United Electric Co. (Penn.), 27 L. R. A. 236.

Respondent cited: Postal Tel. & C. Co. v. Chicago L. S. & S. B. Ry. Co., 97 N. E. 20; Western Union v. C. L. S. & S. B. Ry. Co., 97 N. E. 21; L. S. & M. S. Ry. v. C. L. S. & S. B.

Ry. Co., 92 N. E. 389; Citizens Tel. Co. v. Fort Wayne & So., 100 N. E. 309; Cumberland T. & T. Co. v. United Electric Co., 12 L. R. A. 544; Same Title, 27 L. R. A. 236; Hudson River Tel. Co. v. Watervliet Co., 17 L. R. A. 675; Cincinnati Inc. Plane Ry. Co. v. City & Sub. Tel. Co., 12 L. R. A. 534; Gantz v. Postal Union, 140 Fed. 692.

GATES, J. The ultimate concrete question now in this case is whether a telephone company using a low tension current of electricity and using the earth as a return circuit, the earlier occupant of a highway, or an electric power and light company, the later occupant, using a high tension current, shall bear the expense of installing a metallic return circuit in the telephone lines in order to eliminate the electromagnetic induction of the telephone lines by the power lines.

[1-3] Without going extensively into the scientific aspects of the case, it may be stated that the evidence shows that electric interference between these lines arises in two ways; by conduction and by induction. Induction is of two kinds; static and magnetic. Interference by conduction may be practically eliminated by the proper erection and maintenance of the power line. Interference by static induction may be overcome by a proper balancing of the electric current in the power line. We take it that there is no dispute in this case, but that the power company must eliminate interference by conduction and by static induction. If there is a dispute we nevertheless hold that it must do so. Electromagnetic induction is the transmission of electricity from one electric circuit to another by means of an electric field. See Curtis, Electricity, § 349. This kind of interference may be practically prevented by a co-ordinated transposition of the wires on both systems, but this may be accomplished only where the electric circuits on both systems are metallic; hence the remedy cannot be applied to an earth return telephone line. No other practical method of prevention of magnetic induction is suggested in the evidence.

Plaintiff owns and operates certain telephone lines in South Dakota, both rural and toll lines, and in particular owns and operates rural lines on the highway between Ashton and Frankfort.

Defendant owned and operated an electric light and power

plant at Ashton, with lines to neighboring communities. In September, 1916, pursuant to permission of the county board, it set a line of poles between Ashton and Frankfort, and was about to install the necessary wires for the purpose of transmitting a current of about 6,600 volts, under what is called a 3-wire 60-cycle alternating high power system. Plaintiff sought injunction as an interference with its lines. The case was presented on its merits upon the application for a temporary injunction, and in February, 1917, the trial court vacated the restraining order on condition that defendant should make certain changes in the construction of its line, take certain precautions to prevent interference by conduction, and move a portion of plaintiff's line to the other side of the highway. Defendant then completed its line, and began the transmission of its high power current. In November, 1917, a further hearing was had. Plaintiff submitted proof to show that further requirements were necessary to protect plaintiff's lines. Defendant submitted proof that it had complied with the order of February, 1917. In August, 1918, the trial court filed its findings of fact and conclusions of law, and entered judgment denying the injunction. Thereupon and from an order denying a new trial plaintiff appeals.

Appellant's right to the use of the highway arose from section 554, Rev. C. C. 1903 (section 9791, Rev. Code 1919), and it had been in the actual operation of its rural line on said highway since about the year 1910.

[4]   Respondent's right to the use of the highway arose from chapter 369, Laws 1913 (Rev. Code 1919, §§ 8591-8594), but said chapter contains the following proviso:

"Provided that such transmission line shall not interfere with the service of any telephone or telegraph lines already constructed on such highway."

Notwithstanding the fact that the lines of the respective parties are on opposite sides of the highway, it appears by the clear preponderance of the evidence that by reason of electromagnetic induction the service of appellant's lines is, and will continue to be, substantially interfered with.

[5]   Appellant rather faintly contends that the Legislature was without power to authorize the occupancy of the rural high-

ways for light and power transmission lines other than for the purpose of lighting the highways. We have no hesitancy in holding that when land is taken or dedicated for use as a highway, such taking or dedication should be presumed to be, not merely for such purposes and usages as were known and in vogue at the time of such taking or dedication, but also for all public purposes present and prospective, then known or unknown, consistent with the character of such highways and not actually detrimental to the abutting real estate. Cater v. N. W. Tel. Exch. Co., 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. Rep. 543; People v. Eaton, 100 Mich. 208, 59 N. W. 145, 24 L. R. A. 721; Com. v. Morrison, 197 Mass. 199, 83 N. E. 415, 14 L. R. A. (N. S.) 194, 125 Am. St. Rep. 338; Mordhurst v. Ft. Wayne & S. W. Tr. Co., 163 Ind. 268, 71 N. E. 642, 66 L. R. A. 105, 106 Am. St. Rep. 222, 2 Ann Cas. 967; Brandt v. Spokane & Inland Empire R. Co., 78 Wash. 214, 138 Pac. 871, 52 L. R. A. (N. S.) 760. Indeed it was the recognition of this principle that determined the decision of this court in Kirby v. Citizens' Tel. Co., 17 S. D. 362, 97 N. W. 3, 2 Ann. Cas. 152.

Appellant contends that under the rule that priority in time carries with it priority of right, recognized by this court, in view of the proviso above quoted in Tri-County Mut. Tel. Co. v. Bridgewater Elec. Power Co., 40 S. D. 410, 167 N. W. 501, its right to the use of the earth as a return circuit should be protected.

[16] Respondent contends, and our colleague agrees therewith, that under the rule "Sic utere tuo," etc. (Rev. Code 1919, § 45), the appellant must suffer the interference with its service caused by electromagnetic induction, or must abandon the use of the earth as a return circuit, and at its own expense install a metallic return circuit on the lines interfered with, as substantially found by the trial court. If the Legislature had so declared, we believe no constitutional principle would have been violated. If there had been no legislative direction either way, we believe that under the excellent argument and authorities advanced this court, with perfect propriety, might have laid down that rule. Curtis, Electricity, §§ 356, 357; Cumberland T. & T. Co. v. United Electric Ry. Co., 93 Tenn. 492, 29 S. W. 104, 27 L. R. A. 236; Cumberland T. & T. Co. v. United Ry. Co.

(C. C.), 42 Fed. 273, 12 L. R. A. 544; Lake Shore & M. S. Ry. Co. v. Chicago, L. S. & S. Ry. Co., 48 Ind. App. 584, 92 N. E. 989, 95 N. E. 596; Cincinnati Inclined Ry. Co. v. City & Suburban Tel. Ass'n, 48 Ohio St. 390, 27 N. E. 890, 12 L. R. A. 534, 29 Am. St. Rep. 559; note Ann. Cas. 1916A, 135; Panton v. Holland, 17 Johns. (N. Y.) 92, 8 Am. Dec. 369.

But the Legislature did declare that the later transmission line should not "interfere with the service of any telephone or telegraph line already constructed on such highways."

[7] We must presume that the Legislature of 1913 knew of the extensive occupancy of the highways of the state by rural telephone lines using the earth as a return circuit. It is said there were then 20,000 miles of such lines in this state. It is a fact in this case that no power and light transmission line could be installed between Ashton and Frankfort without occupying a highway already occupied by such lines. We think the manifest intention of the Legislature was to protect telegraph and telephone lines previously constructed from interference with their service. Any other interpretation would merely give protection to such lines from the negligence of the power and light company, a protection which they would have without that statute. Curtis, Electricity, § 357. If respondent is right in its view, protection is merely afforded (in the absence of negligence) to those lines that need no protection. But on the other hand, we do not believe that it was the intention of the Legislature to exclude the power and light transmission lines from occupied highways, provided a remedy could be found by changes and improvements in either system. If appellant must bear the expense of changing its system to a metallic return circuit, clearly it has not been protected in the right given it by that statute. If, however, such expense is borne by the power and light company, then the telephone company cannot justly say that it is not protected in the right acquired by reason of earlier occupancy of the highway. The respondent, therefore, should bear such expense.

[8] Of course, in holding that the Legislature by the proviso intended to protect previously constructed telephone and telegraph lines using the earth as a return circuit, it necessarily follows that under such plan there must be proper construction

and proper maintenance. If there be faulty construction or faulty maintenance such defects must be remedied at the expense of the low power lines. The Legislature did not intend to encourage negligence.

The case of Lake Shore & M. S. Ry. Co. v. Chicago, L. S. & S. Ry. Co., supra, is cited by respondent as analogous in facts and as stating the law which should be applied in this case. In that case the court discussing priority of right in the occupancy of public highways said:

"But this fact [priority of occupancy] can have no legal bearing upon the question involved, for, as said in Thompson, Electricity, p. 57, 'In both of these cases the one having the prior right must yield his right and submit to damage and inconvenience to some extent for the good of his neighbor and of society."

[9] This statement contains the gist of respondent's entire contention in this case, and we might be disposed to adopt the view thus expressed had the legislature of this state not declared and established a different rule which this court in the exercise of its exclusively judicial power cannot change or ignore. The Legislature in direct and specific terms has declared that the later transmission lines should "not interefere with the service of any telephone or telegraph line already constructed on such highway." We are told that the enforcement of this rule necessarily bars the later transmission lines from using the public highways, and thus denies them a right intended to be conferred by the Legislature. This assumption is not true. The right of both parties to occupancy of the highways must be assumed, and such construction placed upon the statute as will enable both to use such highways. This we do by placing on the later transmission line the burden of removing interference by every scientific means, and by holding that telephone and telegraph lines must allow such changes to be made in their lines at the expense of the transmission line as are necessary to remove interference resulting from the construction and use of such transmission line. The power of the court to so frame its injunctional order as to accomplish this purpose can hardly be questioned, and this we have done.

[10] At the time of beginning this action appellant upon

the showing made was entitled to an injunction. Tri-County Mut. Tel. Co. v. Bridgewater Electric Power. Co., supra; Curtis, Electricity, § 365. Since it was denied and the question now is one of dollars, it does not follow that the appellant should be remitted to his remedy in an action at law. A court of equity having taken hold of the case is authorized to determine even the question of dollars.

The judgment and order appealed from are reversed, and the cause is remanded for further proceedings in harmony with this opinion. It is suggested that injunction may not necessarily be the immediate remedy. It is hoped that the parties may agree upon the sum that respondent should pay appellant as the necessary expense of installing so much of a metallic return circuit upon its lines as will obviate electromagnetic interference. If they do not agree, then evidence should be taken and the matter determined by the trial court. If the respondent unreasonably delays compliance with the court's requirements, injunction may then be resorted to.

WHITING, J. (dissenting). I am unable to reconcile my Colleagues' decision regarding the ultimate rights of the parties with their construction of the proviso found in section 8591, Rev. Code 1919. Such decision is also in conflict with the position taken by appellant, both in its complaint and in its brief on this appeal; and yet appellant has contended throughout for the construction my Colleagues have given such proviso. Appellant, as appears from its brief, brought this action upon the theory that, inasmuch as "at the times these lines were built there was no reason why they should not be built on the highways, and there was no reason why the lines should not be ground return lines" (appellant's brief, p. 17), it had the right to continue using its lines in the exact condition they were at the time respondent installed its high power system, and that it owed respondent no duty either to change or to allow respondent to change such lines so as to bring them into harmony with the changed condition brought about by the installation and contemplated use of respondent's high power system. If my Colleagues are right in their construction of the provisions, it necessarily follows that appellant's theory was correct, and the only power of the court is to grant it the very relief prayed

for in its complaint—an absolute and perpetual injunction against respondent, forbidding it to use its lines as high power lines. Under my Colleagues' construction of this proviso, it would not make any difference how the telephone line was constructed. No matter if, owing to faulty construction of the telephone system, the power line could not be operated without causing electric interference, both by conduction and induction, with the service, howsoever poor, rendered the patrons of the telephone system, yet, under their construction of the proviso, the power company would have no right (because there is no corresponding duty on the part of the telephone company) to even, at its own expense, put the telephone line into such a condition as would eliminate such interference. Equity must follow the law—it cannot act where there is neither legal right nor duty to support action. Suppose respondent had brought this action pleading that it had installed a high power system, perfect in every respect; that, owing to the law of electric induction, it could not operate such system without interferince with the service on appellant's line; and that the law forbade such interference; and had then prayed that appellant be compelled, at respondent's expense, to either put in the metallic return circuit and so transpose its wires that such interference would be eliminated, or to allow respondent to do so. A demurrer to such complaint, based upon appellant's right, under said proviso, to maintan and operate its system as it then was, would, under my Colleagues' construction of the proviso, have to be sustained, because of the absence of any duty on the part of appellant or right on the part of respondent upon which to base the prayer for relief. If A. has a piece of property in lawful condition and use, it matters not how much such property may interfere with the use of B.'s property, nor of how great benefit to the public some contemplated use of B.'s property may be, nor how much of a moral obligation there may be on A.'s part to make such changes in his property or its use as would permit of the contemplated use of B.'s property—B. cannot, except under the power of eminent domain, either acquire A.'s property or require him to make any change in it or its use.

What, then, is the controlling question in this case? It is: Does the proviso relieve appellant of the duty that it would

otherwise owe respondent and the public? My Colleagues frankly concede that the authorities I have called to their attention and which they have cited · give full support to respondent's claim that there rested on appellant that duty which should be imposed upon every person or corporation allowed to occupy a highway for the purpose of serving the public; but they hold that the proviso relieves appellant of that duty. I can find nothing in the statute to warrant such holding. In my opinion the proviso protects telephone companies from all interference. that is not traceable to a failure on their part to meet the duty assumed by them; but it does not protect them from interference that would not exist if they had complied with such duty. In short, I am of the opinion that any interference in service traceable to a failure of a telephone company to construct and operate its line in full compliance with its duty to the state is not an interference under the quoted proviso.

What is the nature and extent of that duty that rests upon those to whom is given the right to occupy public highways and to construct thereon public service systems? The authorities cited by my Colleagues give full support to the thoughts I desire to suggest.

Just as the dedicator of the highway must be held to dedicate it for all purposes consistent with its use as a highway— and this whether all of such purposes to which the state may thereafter desire to devote it are known at the time of the dedication—so a public service person or body, which occupies a highway for public service purposes, must be held to have placed its property thereon under the implied condition that it would so maintain and operate its property as to meet and conform to human progress; and therefore would, from time to time, make such changes in its property and the use thereof as might be found necessary to meet changed conditions brought about by the occupancy of such highways by other public service persons or bodies. This is but requiring of public servants that which is required of the private individual. When the automobile came into use, the drivers thereof did not have to bring the horse and ox into adjustment with the new conditions any more than they had to give over half of the road to old "Dobbin." The proper use of the automobile could never be held an "interfer-

ence" with the rights of man or beast—they must adjust themselves to the new conditions. Primitive man did not have to wait on the corner until the congestion of autos, trucks, and street cars ended and a way opened through which he might dart across a street; but a man, woman, and child of to-day has to so wait. The use of the streets by pedestrians is limited and restricted on all hands, but there is no "interference" analogous to that which the Legislature sought to prevent by the proviso. Here we have two public service corporations who have derived their franchises from the same original source— the public. They both render most important public services— it would be hard to say which service is of greater importance and certaintly but a short time will find each indispensable unless replaced by something better. The public, acting through the Legislature, intended that they should both exist and render service under conditions favorable thereto. No question of dominant and servient rights of occupancy is presented. Neither should allow any occasion for conflict of rights to arise if it can be avoided through a proper construction and use of its property, and such a conflict cannot and will not arise if each will but "exercise its power with that careful and prudent regard for the rights of the other which the law enjoins," not only upon corporations, but upon individuals. Cumberland T. & T. Co. v. United Electric Co., 93 Tenn. 492, 29 S. W. 104, 27 L. R. A. 236. The case of Lake Shore & M. S. Ry. Co. v. Chicago, L. S. & S. Ry. Co., 48 Ind. App. 584, 92 N. E. 989, 95 N. E. 596, presented facts very analogous to those before us. There the isssues raised the rights of a low power line, a telegraph line, as against those of a high power line, an electric railway of later construction. There, as here, the low power system had not been physically injured—the wrong complained of being "interference" through electroinduction. There, as here, the low power company was seeking to restrain the operation of the high power system. The court said that there was not presented facts calling for the application of the maxim, "Sic utere tuo ut alienum non lædas"; and it said:

"It seems to be the consensus of opinion, both in England and in this country, that where one is acting under legislative authority, and within the right thus given, and reasonably within

the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience or incidental damage which may arise in the absence of any negligence from the reasonable use of his own property will be regarded as within the rule damnum absque injuria."

In support of the above many cases were cited. It also noted the fact that the low power system was in operation before the high power one, and said:

"But this fact can have no legal bearing upon the question here involved, for, as said by Thompson in his work on Electricity, p. 57: 'In both of these cases the one having the prior right must yield his right and submit to damage and inconvenience to some extent for the good of his neighbor and of society."

In other words, the court held there was no "interference" with any legal right, because if they had been the law would have given a remedy. We believe the law to be that which the court in Cumberland, etc., Co. v. United Electric Co. (C. C.), 42 Fed. 281, 12 L. R. A. 544, said was the "substance of all the cases we have met with in our examination of this question," to wit:

"Where a person is making lawful use of his own property, or of a public franchise, in such a manner as to occasion injury to another, the question of his liability will depend upon the fact whether he has made use of the means which, in the progress of science and improvement, have been shown by experience to be the best; but he is not bound to experiment with recent inventions, not generally known, or to adopt expensive devices, when it lies in the power of the person injured to make use himself of an effective and inexpensive method of prevention."

The above holding fully recognizes that, under the conditions named, there is no "interference" with the rights of the person who might avoid the injury; and certainly, if respondent herein could not be required to "experiment with recent inventions, not generally known, or to adopt expensive devices," its right to use a properly constructed system cannot be conditioned upon its supplying appellant with some device which is within the power of appellant to itself make use of. While, in the

case of Cincinnati Inclined Plane R. Co. v. City & Suburban Teleg. Asso., 48 Ohio St. 390, 27 N. E. 890, 12 L. R. A. 534, 29 Am. St. Rep. 559, there was a low power system whose occupation of the street the court held to be "inferior and subservient to the dominant easement of the public for highway purposes," and therefore subservient to that of the particular high power system, yet the following from the opinion therein is equally applicable to systems whose occupancies are, because of the purposes thereof, of like rank:

"Conceding that the mode adopted by the railway company of propelling its cars by electricity is an interruption to the telephone service of the defendant in error, and calculated to impair its franchise in the manner contended, the inquiry is suggested whether the railway company must yield up a useful franchise that the same may be exclusively enjoyed by the telegraph association, or whether the association shall adapt its system to existing conditions.'

Appellant company received its franchise from the public, the state; it holds such franchise in trust for the benefit of those communities it undertakes to serve; it has no right, simply because, at the time it first occupies a highway, there may be nothing to prevent the operation of its line without a return metallic circuit, to say that it becomes vested with a right to thus operate for all times and thereby to deny to the very communities it has undertaken to serve the enjoyment of public utilities that are open to the enjoyment of other communities that may not have already been blessed by appellant's presence. The Legislature never intended to allow it thus to throw a wrench into the wheels of human progress. I apprehend that appellant would be in court, crying aloud for relief if, perchance, it desired to install one of its low power lines along a highway already occupied by respondent, and it found respondent had so constructed or was so operating its line that, through faulty construction, unbalancing of loads, or failure to properly transpose wires, a condition existed under which, even with a metallic return circuit, appellant could not operate a low power line along such highway. If it would be the duty of respondent, if it had been first in the field, to make necessary changes to permit of the advent of appellant into the

same field, there is a like duty on appellant's part. There can be no "interference" while this duty remains unperformed if its performance would eliminate the trouble.

In short, I hold the law to be that, when a public service body obtains a right or franchise to operate upon the highways of our state, it takes such right of franchise subject to the right of the state to permit the occupancy of such highways for other proper purposes; and it takes such right or franchise knowing that, when the state does permit such other occupancy of the highway, it must, and at its own expense, conform its system and the use thereof to the new conditions thus created. Where it has done this the new occupant must so construct and operate its system as not to "interfere" with the service of the old occupant.

It follows from the above that the relief granted in the majority opinion is unwarranted under the facts and the law. To warrant such relief there must exist that duty on the part of appellant which my Colleagues concede would exist were it not for the proviso; but to warrant such relief there must be found somewhere warrant for holding that such duty is conditioned upon respondent's standing the expense of its performance. The Legislature has not so provided, but has left appellant burdened with the duty it assumed when it occupied the highway and has guaranteed to it freedom from interference in its service when it has complied with the duty so assumed.