Lake Shore, etc., R. Co. *v.* Chicago, etc., R. Co.—48 Ind. App. 584.

the lower court to sustain the motion for a new trial, to sustain the demurrers to the sixth and ninth paragraphs of answer, to permit the parties to amend their pleadings if desired, and for further proceedings not inconsistent with this opinion.

LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY
COMPANY *v.* CHICAGO, LAKE SHORE AND
SOUTH BEND RAILWAY COMPANY.

[No. 7,664.    Filed November 18, 1910.    Rehearing denied June 23,
1911.    Transfer denied November 1, 1911.]

1. NUISANCE.—*Use of Property.—Incidental Damage.—Maxims.*—Though the maxim "*sic utere tuo ut alienum non laedas*" expresses a well-settled rule of law, it must be limited in its broad statement so as not to include the damages incident to the proper use of property, expressed in the words "*damnum absque injuria.*" p. 586.

2. NUISANCE.—*Definition.—Statutes.*—"Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property," constitutes the statutory definition of a nuisance (§291 Burns 1908, §289 R. S. 1881) ; and it is for the courts to determine whether the particular facts bring the case within the statute.    p. 588.

3. RAILROADS.—*Interurban.—Nuisance.*—The use of a high voltage of electricity by an interurban railroad does not constitute a nuisance *per se*, where it is authorized by law, though the circumstances and manner of such use may make it a nuisance. p. 588.

4. PLEADING.—*Allegations.—How Considered.*—A pleading is presumed to contain all the facts in the party's favor.    p. 588.

5. INJUNCTION.—*Steam Railroads.—Interurban Railroads.—Use of Electricity.—Complaint.*—A complaint by a steam railroad company to enjoin an interurban railroad company from operating its line, alleging that defendant has installed and is using high-tension currents of electricity, that by induction all electrical conductors in proximity to such system are caused thereby to have similar electrical currents, that such currents interfere with the plaintiff's telegraph lines, that such interference could have

MAY TERM, 1911.          585

Lake Shore, etc., R. Co. *v.* Chicago, etc., R. Co.—48 Ind. App. 584.

been avoided by defendant's installation of electrical devices and appliances, and that upon the completion of defendant's road the interference will destroy plaintiff's use of its telegraph lines, to its damage, does not state a cause of action.   pp. 588, 589, 591, 593, 594.

⭑6.  RAILROADS.—*Interurban.*—*Eminent Domain.*—Interurban railroad companies are *quasi*-public corporations, and are empowered to select their routes, and to condemn the property necessary for their use.   p. 589.

7.  DAMAGES.—*Sine Injuria.*—*Use of Property.*—*Legislative Sanction.*—One using his property under legislative sanction, in a reasonable and proper way, without malice or negligence, is not liable for incidental damages to others, such injuries being regarded as "*damnum absque injuria*"; and the fact that the plaintiff was established in the use of his property before defendant located and established its business does not affect the question.   p. 590. ·

8.  EVIDENCE.—*Judicial Notice.*—*Electricity.*—Courts take judicial notice that 33,000 volts of electricity, if uncontrolled, is dangerous to life, limb and property.   p. 593.

9.  CONSTITUTIONAL LAW.—*Destruction of Property.*—*Use.*—The legislature has no power to authorize such a use of property as virtually to deprive an adjoining owner of the legitimate and proper uses of his property.   p. 593.

From Laporte Superior Court; *Harry B. Tuthill,* Judge.

Suit by the Lake Shore and Michigan Southern Railway Company against the Chicago, Lake Shore and South Bend Railway Company.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

*John B. Peterson,* and *Glennon, Cary, Walker & Howe,* for appellant.

*F. J. Lewis Meyer, D. E. Morgan* and *Kline, Tolles & Morley,* for appellee.

MYERS, J.—On August 31, 1909, appellant was, and for years prior thereto had been, a duly incorporated railway company, engaged in operating a line of steam railroad on its private right of way from Chicago, Illinois, to Buffalo, New York, and in Indiana, in part, from Gary to South Bend; that on said day appellee was engaged in constructing on its private right of way, adjacent to appellant's right of way,

an electric railway, between the town of Gary and the city of South Bend, paralleling appellant's line of railroad, a portion of which had been constructed and was being operated; that appellee's cars were operated by an electric system known as "the single phase alternating current;" that by reason of the proximity of the two lines of railroad, and the manner of construction and mode employed by appellee in operating its railway, the high-tension current of electricity used by it greatly interfered with the maintenance and use by appellant of its system of electric telegraph lines and signals necessary in the operation of its railroad. For the purpose of stopping such interference, this suit was commenced by appellant to enjoin appellee from operating its said line of railway until it should install such electrical devices, or other appliances, as will neutralize the inductive current of electricity alleged to be the cause of appellant's trouble.

A demurrer to appellant's complaint, for want of facts, was sustained, and judgment on demurrer was rendered. The questions presented by this appeal relate to the sufficiency of the complaint.

It must be kept in mind that neither negligence, unskilfulness nor malice is charged in the construction, maintenance or operation of appellee's line of railway, and that appellant is basing its right to relief solely on the broad principle "that the person who for his own purposes brings on his lands and collects and keeps thereon anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape." *Fletcher* v. *Rylands* (1866), L. R. 1 Ex. *265.

Appellant earnestly insists that the doctrine enunciated in the case cited controls this case, for the reason that appellee is engaged in a business upon its own premises, 1. that requires the use of an element that escapes to the premises of appellant, unwarrantably interfering with the latter's use and enjoyment thereof, and is a nui-

sance, when measured by the rule that anything is a nuisance which annoys or disturbs one in the possession of his property, and renders its ordinary use or occupation physically uncomfortable to him. *Baltimore, etc., R. Co.* v. *Fifth Baptist Church* (1883), 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739.

This insistence, if sustained and allowed to control the vital questions in this case, must be limited to the maxim, *sic utere tuo ut alienum non laedas,* often applied where one violates a duty which he owes to another as furnishing a general description of a nuisance. While the principle thus stated is as sound as it is old, ''a nuisance does not necessarily exist even though one may by the use of his own property cause an injury or damage to another. The case may be one known as *damnum absque injuria,* and the factors of locality, of unauthorized, or unreasonable use are of weight.'' Joyce, Nuisances §29.

It will, therefore, be seen that the principle involved in this maxim contemplates a legal injury to the property of another, ''for the rightful use of one's own land may cause damage to another, without any legal wrong. So a man may do many things under a lawful authority, or in his own land, which may result in an injury to the property of others, without being answerable for the consequences. Indeed an act done under lawful authority, if done in a proper manner, can never subject the party to an action whatever consequences may follow. A man may enjoy his land in the way such property is usually enjoyed, without being answerable for the indirect or consequential damages which may be sustained by an adjoining landowner. It follows that the maxim *sic utere,* etc., is undoubtedly to be so limited in its application as not to restrain the owner of property from a prudent and reasonable exercise of his right of dominion. If in the exercise of his right, another sustains damage it is *damnum absque injuria,* for in the matter of things and society, it is not reasonable that every annoyance should con-

stitute an injury such as the law will remedy or prevent.'' Joyce, Nuisances §32.

In this State, by statute, ''whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.'' §291 Burns 1908, §289 R. S. 1881.

There is no claim that the business as carried on by appellee was injurious to health, or indecent, or offensive to the senses, but that it was an obstruction to the free use of property, and essentially interfered with the comfortable enjoyment thereof. The legislature has declared in general language what constitutes a nuisance, and it is for the court to determine whether the facts charged bring the particular case within the statute.

The business carried on by appellee was not a nuisance *per se.* It was and is expressly authorized by statute (Acts 1903 p. 92, §1, §5675 Burns 1908). But the fact alone that appellee is engaged in a lawful business will not protect it if guilty of maintaining an actionable nuisance, for a lawful business may be of such a nature, or so situated or conducted, depending upon the circumstances, as to become a nuisance. *Foor* v. *Edwards* (1910), 45 Ind. App. 259; *Pritchett* v. *Board, etc.* (1908), 42 Ind. App. 3.

In this case, on the theory that a party's pleading is presumed to be as strongly in his favor as the facts will warrant (*W. B. Conkey Co.* v. *Larsen* [1910], 173 Ind. 585), we may assume that the electrical system used by appellee was the best devised, and that it was carefully and skilfully employed. Appellant's property has not been physically injured, nor any of it taken; nor has appellant been damaged in any stated amount; but it is alleged, in substance, that the high-tension current of electricity employed by appellee, through what is

scientifically known as induction, caused electrical currents of similar character in all electrical conductors in proximity to the trolley system, thereby interfering with the operation by appellant of its telegraph lines, using electrical currents of small intensity, and that such interference could have been obviated by appellee's installing electrical devices and appliances; that upon the completion of appellee's road, the interference will become continuous, entirely depriving appellant of the use of said telegraph lines, in the value of several thousands of dollars, and to its damage in a sum not susceptible of being estimated.

It must be kept in mind that this is a suit to enjoin appellee from operating its road, on the ground that it is guilty of maintaining a nuisance. Appellee is a

6. *quasi*-public corporation, authorized to exercise the right of eminent domain. Acts 1903 p. 92, §3, §5679 Burns 1908. The public is concerned in the business in which appellee is engaged. The State has sanctioned it, and has vested appellee with authority to select a place of operation. Appellee is not charged with making an unlawful use of any privilege conferred upon it by the State, nor

5. with using the premises selected for the purpose of carrying on its business in any manner not contemplated by the statute. This controversy is between users of electricity—appellant using light currents, and comparatively delicate instruments, which are interrupted by escaping currents from the wires belonging to appellee, which carry exceedingly high voltage.

It is not a question between one engaged in the ordinary development of his land, and the customary and appropriate employment of it, according to its inherent qualities and its surroundings, without bringing upon it artificially any substance not naturally found there (*Evans* v. *Reading Chemical, etc., Co.* [1894], 160 Pa. St. 209, 28 Atl. 702; *Pennsylvania Coal Co.* v. *Sanderson* [1886], 113 Pa. St. 126, 6 Atl. 453, 57 Am. St. 445), and one engaged in the unnatural and

extraordinary use of his property, calling for the application of the maxim *sic utere tuo,* etc., which is the governing principle in the cases of *Fletcher* v. *Rylands, supra,* and *Rylands* v. *Fletcher* (1868), L. R. 3 H. L. 330.

In this case the use of electricity is common to both parties, and both are acting under legislative sanction. In such cases, it seems to be the consensus of opinion, both in England and in this country, that where one is acting under legislative authority, and within the right thus given, and reasonably within the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience, or incidental damage, that may arise in the absence of any negligence from the reasonable use of his own property, will be regarded as within the rule *damnum absque injuria.* *National Tel. Co.* v. *Baker,* [1893] 2 Ch. 186; *London, etc., R. Co.* v. *Truman* (1885), 11 App. Cas. 45; *Eastern, etc., Tel. Co.* v. *Capetown Tramways Cos.,* [1902] A. C. 381; *Cumberland Tel., etc., Co.* v. *United Electric R. Co.* (1890), 42 Fed. 273, 281, 12 L. R. A. 544; *Cincinnati, etc., R. Co.* v. *City, etc., Tel. Assn.* (1891), 48 Ohio St. 390, 27 N. E. 890, 12 L. R. A. 534, 29 Am. St. 559; *Hudson River Tel. Co.* v. *Watervliet, etc., R. Co.* (1892), 135 N. Y. 393, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. 838; *Losee* v. *Buchanan* (1873), 51 N. Y. 476, 10 Am. Rep. 623; *Cosulich* v. *Standard Oil Co.* (1890), 122 N. Y. 118, 25 N. E. 259, 19 Am. St. 475; *Brown* v. *Collins* (1873), 53 N. H. 442, 16 Am. Rep. 372; *Everett* v. *Hydraulic, etc., Tunnel Co.* (1863), 23 Cal. 225; *Pixley* v. *Clark* (1860), 32 Barb. 268.

Our attention has been called to the fact that appellant was engaged in operating its railroad, telegraph and signal wires long prior to the location and operation of the electric road by appellee, but this fact can have no legal bearing on the question involved, for as said in Thompson, Electricity p. 57 "in both of these cases the one having the prior right must yield his right and submit to damage and inconvenience to some extent for the good of his neighbor and of society."

The court, in the case of *National Tel. Co.* v. *Baker, supra,* in considering the principle announced in *Fletcher* v. *Rylands, supra,* said that it had never been applied in English law to a state of facts like those under consideration, and in speaking of the American law, the court then concluded the question settled in this country, that the owner of land used for an unnatural or extraordinary purpose is "responsible for the consequences of such user to his neighbor only when they result from that owner's negligence; and if he can satisfy the court that he has not been guilty of negligence, the resulting damage to his neighbor is not actionable." In the same case it was said: "The defendants are expressly authorized to use electrical power, and the legislature must be taken to have contemplated, and to have condoned by anticipation any mischief arising from a reasonable use of such power."

The court in the case of *Cumberland Tel., etc., Co.* v. *United Electric R. Co., supra,* was considering a case brought by the telephone company against the electric railway company, wherein the plaintiff sought to enjoin the defendant from using electric energy to propel its cars under any system which makes use of the earth for its return circuit. It was shown that the current used by the railway company was stronger than that used by the telephone company, and through various agencies, known as "conduction," the stronger currents used by the railway company overcame the weaker currents used by the telephone company, and greatly interfered with telephonic communication. The court said: "We understand the law to be well settled that no person is liable for damages incidentally occasioned to another by the necessary and beneficial use of his own property, or of a franchise granted to him by the state. The principle is thus stated by Judge Woodworth in *Panton* v. *Holland* [1819], 17 Johns. *92, *99, 8 Am. Dec. 369: 'On reviewing the cases, I am of opinion that no man is answerable in damages for the reasonable exercise of a right, when it is

accompanied by a cautious regard for the rights of others, when there is no just ground for the charge of negligence or unskilfulness, and when the act is not done maliciously.' '' It was further said: ''The substance of all the cases we have met with in our examination of this question—and we have cited but a small fraction of them—is that, where a person is making lawful use of his own property, or of a public franchise, in such a manner as to occasion injury to another, the question of his liability will depend upon the fact whether he has made use of the means which, in the progress of science and improvement, have been shown by experience to be the best; but he is not bound to experiment with recent inventions, not generally known, or to adopt expensive devices, when it lies in the power of the person injured to make use himself of an effective and inexpensive method of prevention.'' The injunction in said case was denied on the following grounds: ''(1) That the defendants are making lawful use of the franchise conferred upon them by the state, in a manner contemplated by the statute, and that such act cannot be considered as a nuisance in itself. (2) That, in the exercise of such franchise, no negligence has been shown, and no wanton or unnecessary disregard of the rights of the complainant. (3) That the damages occasioned to the complainant are not the direct consequence of the construction of the defendants' roads, but are incidental damages resulting from their operation, and are not recoverable.''

In the case at bar it is said that appellee, by the use of certain appliances, could prevent the escape of electricity from its wires. No suggestion is offered as to the character of these appliances, or whether they are in general use, nor is anything said in the way of approximating the expense to appellee from their adoption, nor does it appear that appellant might not, by some inexpensive method, have prevented the annoyance to which it is now subjected.

We know that electricity, to the extent necessarily employed by appellee in moving its cars—33,000 volts—if un-

controlled, would produce injury to life, limb and property, but such a condition is not present. The escaping currents do not affect appellant in the enjoyment of its property, aside from annoyance when using its fixtures that carry small electric currents; nor does it appear that other neighbors in the natural use of their property are at all disturbed. Therefore, as said in *Eastern, etc., Tel. Co.* v. *Capetown Tramways Cos., supra:* "The principle of *Rylands* v. *Fletcher* [(1868), L. R. 3 H. L. 330], which subjects to a high liability the owner who uses his property for purposes other than those which are natural, would become doubly penal if it implied a liability created and measured by the nonnatural uses of his neighbor's property."

Here we have two adjoining owners, using their property for the same general purposes, and each exercising an undoubted legal right, and neither charged with negligence, unskilfulness nor malice. They belong to that class of owners known as legislative-empowered, nonnatural or extraordinary users of land. The peculiar apparatus in use by one, is said to be rendered less efficient by the escaping electric currents from the appliances in use by the other, but no tangible or sensible injury to person or property of the complainant is shown. There are so many exceptions that must be recognized when formulating any general rule defining the respective rights of such owners in the use of their property, that very few courts have attempted to formulate such a rule without the element of negligence, unskilfulness or malice. So the courts in this country, contrary to the principle of *Fletcher* v. *Rylands, supra,* are agreed in holding the owner of land, under the facts here appearing, responsible for the consequences of such user only when they result from the owner's negligence.

It is true that legislative authorization to take and use property does not extend to the point of depriving, without redress, an adjoining owner of the legiti-

Vol. 48—38

mate uses and rights in his property, nor does it permit one neighbor to set up such a condition on his premises as will exclude a subsequent comer on adjoining land from its proper and lawful uses.  It is not alleged that appellee was conducting without care and skill upon its premises a *quasi*-public enterprise by virtue of legislative authority, nor that it had not adopted, or was not maintaining in good repair, such appliances as are generally recognized as the best and most approved for the business in which it was engaged, nor was it charged with any unwarrantable, unreasonable or unlawful acts or use of its property.  As we see this case, the controlling principle in many respects is analogous to the principle that protects a steam railroad from the charge of maintaining a nuisance, preferred by an adjoining owner because of the annoyance, discomfort or injury caused by the noise and vibration from its trains, and by the sparks, coals of fire and smoke emitted from its engines and thrown upon the premises of such adjoining owner, which would amount to an actionable nuisance were it not that the operation of the railroad had legislative sanction.

Judgment affirmed.

## ON PETITION FOR REHEARING.

MYERS, J.—Appellant in support of its petition for a rehearing cites the case of *Peoria Water-Works Co.* v. *Peoria R. Co.* (1910), 181 Fed. 990, as announcing a rule of law contrary to that expressed by this court at the former hearing of this case.  At that time we were not advised as to the ruling in that case, but in consideration of the petition before us we have carefully examined the facts and opinion of the court as reported, without being persuaded that there is any conflict in the two opinions.

In the case just cited, the relief sought was an injunction to prevent injury to water-mains by electrolysis.  The case was referred to a special master for his findings of fact and

conclusions of law. · At page 996 it is said: "The ultimate facts disclosed by the evidence may be briefly summarized as follows: (1) The injury complained of exists. (2) The injury is permanent and continuing. (3) The injury has been and is being caused by the defendants. (4) The complainant can do nothing to prevent the injury." Under the heading "Conclusions of Law," on page 997, it is said: "(6) The injury which is being done to complainant's water-pipes by the defendants' currents of electricity is not a mere incidental injury or inconvenience, but is a permanent, continuing injury to a legal right, which will, in effect, if the injury is permitted to go on, ultimately result in the absolute destruction of complainant's plant and property." It is also said, at page 998: "(1) It is possible for the defendants so to operate their railways by electric motive power as not to injure the complainant's property. (2) It is impossible by any known method for the complainant to protect its property from such injury. * * * (4) The failure on the part of the defendants to observe such duty constitutes negligence, and, when it results in damage to another, such damage is actionable. * * * (10) The injury found to be going on in this case is the direct consequence of the unnecessary and wrongful acts of the defendants in accomplishing a legal result."

In the course of the opinion of the court, at page 1003, it is said: "At the outset it may be said that the court has no power to prescribe by injunction the use of any particular system of circuit or negative return. It is doubtful, indeed, whether the judicial power would extend to the making of a decree restraining the defendant from continuing to serve the public unless it shall cease injuring complainants' water system."

The facts set forth in the complaint at bar are entirely different from the facts found in the case cited. In the latter case the water company was powerless to prevent the injury of which it complained. In this case, appellant, at a

small expense, might have remedied the trouble. It was within the power of the railway company to minimize the escape of its electric currents, and thereby prevent a destruction of the water company's property. In this case, appellee may be using the most approved apparatus known to science. In the case of *Peoria Water-Works Co.* v. *Peoria R. Co., supra,* the findings show that the railway company was guilty of negligence, and that the injury was the direct result of the unnecessary and wrongful acts of defendants. In the case at bar, appellant expressly declines to base its asserted right on the theory of negligence, unskilfulness or malice in the construction, maintenance or operation of appellee's line of railway.

Finding no reason for granting appellant's petition for a rehearing, it is overruled.