[No. 16859. Department Two. July 3, 1922.]

A. F. PHILLIPPAY, *as Receiver etc., Respondent,* v.
PACIFIC POWER & LIGHT COMPANY, *Appellant.*[1]

ELECTRICITY (2)—ELECTRIC COMPANIES—FRANCHISES. A power company maintaining a high voltage power line on a highway by virtue of a franchise is not liable to a rural telephone company operating a telephone line on the same highway under a prior franchise, for interference with the telephone service by reason of the proximity of the electric fields, and cannot be held for the cost to the telephone company of metallicizing, or changing from a modern conductive to inductive system, to obviate the difficulty.

SAME (2)—FRANCHISES (4)—EXCLUSIVENESS OF GRANTS. Under Rem. Comp. Stat., § 6431, providing that no exclusive franchise or privilege shall be granted in highways, a telephone company, having a prior franchise in a highway, has no rights superior to a high voltage power line under a subsequent franchise, whereby the latter company would be liable for interfering with the telephone service through the proximity of the two lines.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered March 16, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to a telephone company caused by electrical induction from a power line. Reversed.

[1]Reported in 207 Pac. 957; 211 Pac. 872.

*Sharpstein, Smith & Sharpstein, John A. Laing,* and *Henry S. Gray,* for appellant.

*Chas. W. Johnson,* for respondent.

MAIN, J.—The plaintiff, as receiver for the Connell-Kahlotus Telephone Company, a corporation, brought this action seeking to recover damages from the defendant for the cost of metallicizing a telephone line in order to prevent inductive interference with the telephone service by the high power transmission line of the defendant, and for loss of profits occasioned by such interference.   After the issues were framed, the cause came on for trial before the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $1,400, special verdicts being also returned finding that the cost of metallicizing was $900 and the loss of profits $500.   At the conclusion of the case and before it was submitted to the jury, the defendant moved for a directed verdict, which was overruled. After the return of the verdict, the defendant moved for a judgment notwithstanding the verdict.   This motion was also overruled.   Judgment was entered against the defendant for $1,400, and from that judgment it prosecutes this appeal.

During the year 1910, the telephone company, having received a franchise from the county commissioners, constructed a rural telephone line extending from Connell to Kahlotus, a distance of approximately twenty-two miles.   From this line, constructed along the highway, branch lines extended out to telephone users.   In 1917, the appellant, who will be referred to as the power company, after having obtained a franchise, constructed a transmission line from Pasco to Lind. A portion of this line was upon the same highway as that of the telephone company and paralleled its line, the telephone line being on one side of the highway

and the power line on the other. The transmission line of the power company transmits energy at 66,000 volts, and when it was energized it interfered with the use of the telephones, causing a buzzing noise and preventing their accustomed use. There is no claim that the power line was not constructed, maintained and operated in accordance with the best standards of modern engineering practice. A wire which carries an electric current creates an electric field surrounding itself and induces a certain amount of its current into every other wire within the same field. The testimony shows that the electric field created by the power line in this case extended for one thousand feet to one mile on either side thereof. It was the flow of the current from the power line to the telephone line that caused the buzzing noise and interfered with the use of the telephones. This transmission of the current through the air from one line to the other is called induction. Where the current is transmitted or flows through the earth it is called conduction. The telephone company maintained a single wire, or what is called a grounded system, by which the circuit is completed by the electricity returning through the earth from the terminal of the circuit to the point of origin. The metallicizing consisted in changing the telephone line from a single line to a two line system, thus furnishing a wire for the returning circuit which, with the single line, had been completed, as stated, by returning through the ground. The induction from the power line to the telephone line in no manner injured any property of the telephone company but only interfered with its use. When the power line was not energized the telephone could be used, the buzzing noise not being present. There was no way that the power line could have been constructed, operated, or maintained which would prevent interference by induction.

The appellant contends that it, being rightfully on the highway by reason of a franchise properly granted, was under no duty of metallicizing or bearing the cost of metallicizing the telephone line. The respondent contends that, since the power line interfered with the use of the telephones, that company should bear the expense of metallicizing.

The controlling question then is whether the power company was under obligation to bear such cost. This question is one of first impression in this court. It should be remembered, in considering the question, that the telephone company did not own the land through which with its single line system the current returned to the point of origin. The weight of authority, so far as the question has been determined, is in favor of nonliability of the power company. In Deiser on the Law of Conflicting Uses of Electricity and Electrolysis, p. 21, after considering the cases upon the question, the author summarizes the principles as follows:

"Summarizing the results of these cases, and in particular the case last examined, this much may be accepted as established in legal controversies of this sort. The attempt to enjoin the construction and operation of a street railway, because of any inconvenience to other franchise holders produced by its mere operation, is hopeless. Nor can the holder of another franchise, such as the telephone, hope to recover the cost of remedying defective apparatus, and any telephone apparatus capable of being disturbed to any marked extent by induction must be classified as defective, so long as there exist insulating or isolating devices, such as the complete metallic circuit, or the noninductive circuit, that would protect the telephone or telegraph lines. This much may be taken as settled. The operation of the railway cannot be enjoined in such cases, nor can the railway be compelled to change from a single to a double trolley system."

In *Lake Shore & M. S. R. Co. v. Chicago, L. S. & S.
B. R. Co.,* 48 Ind. App. 584, 92 N. E. 989, 95 N. E. 596,
was involved the conflicting claims of two transporta-
tion companies, each operating on its own right of way.
In that case the plaintiff was operating a steam rail-
road through a portion of the state of Indiana. In
connection with the operation of the railroad it used
a system of electric telegraph lines and signals neces-
sary to its operation. The defendant was engaged in
constructing, on its private right of way adjacent and
paralleling its road, an electric railway between the
towns of Gary and South Bend, a portion of which had
been constructed and was in operation. The com-
pany's cars were operated by an electric system known
as the "single phase alternating current." By reason
of the proximity and parallelism of the two lines, the
high tension current used by the defendant interfered
with the maintenance and use by the plaintiff of its
system of electric telegraph lines and signals, the cur-
rent there, as here, passing from the defendant's line
to the plaintiff's by induction. It was held that the
operation of the defendant's line would not be inter-
fered with at the suit of the plaintiff. In the course
of the opinion it was said:

"This controversy is between users of electricity—
appellant using light currents, and comparatively deli-
cate instruments, which are interrupted by escaping
currents from the wires belonging to appellee, which
carry exceedingly high voltage.

"It is not a question between one engaged in the
ordinary development of his land, and the customary
and appropriate employment of it, according to its in-
herent qualities and its surroundings, without bringing
upon it artificially any substance not naturally found
there (*Evans v. Reading Chemical etc., Co.,* [1894],
160 Pa. St. 209, 28 Atl. 702; *Pennsylvania Coal Co. v.
Sanderson* [1886], 113 Pa. St. 126, 6 Atl. 453, 57 Am.

St. 445), and one engaged in the unnatural and extra-ordinary use of his property, calling for the application of the maxim *sic utere tuo,* etc., which is the governing principle in the cases of *Fletcher v. Rylands, supra,* and *Rylands v. Fletcher* [1868], L. R. 3 H. L. 330.

"In this case the use of electricity is common to both parties, and both are acting under legislative sanction. In such cases, it seems to be the consensus of opinion, both in England and in this country, that where one is acting under legislative authority, and within the right thus given, and reasonably within the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience, or incidental damage, that may arise in the absence of any negligence from the reasonable use of his own property, will be regarded as within the rule *damnum absque injuria.*"

A like result was arrived at in the case of *Eastern and South African Telegraph Co. v. Cape Town Tram. Co's,* 2 British Ruling Cases 114, decided by the House of Lords of England on appeal from the supreme court of the Cape of Good Hope. In that case an action was brought by the telegraph company against the tramway company for damages for disturbance of the telegraph line caused by the working of the tramway, and for the cost of appliances to prevent such interference. The interference there, as here, was caused by induction, and it was held that the tramway company was not liable, and in affirming the case it was said:

"Certainly there is here no injury of the same genus or species with the tangible and sensible injuries which have hitherto founded liability on the principle in question, and which have always constituted some interference with the ordinary use of property. Now the kind and degree of interference with the respondents' property is pretty well illustrated by the fact that it can only take place if the cable is constructed without certain precautions, for, given the cable as it now is,

there is no injury. This is referred to, not because their Lordships consider that the respondents have made out that the twin cable had the general use and recognition which they ascribed to it, but as showing that it cannot be predicated of the electric escape in question that it is destructive of telegraphic communication generally, but only that it affects instruments made in a certain way. Now, if the instrument be taken as it was when the injury occurred, its nature is such that to insure its immunity from disturbance is a somewhat serious liability to cast on neighbors. To describe this as a delicate instrument might be inaccurate, if the term were used in relation to other electrical instruments of extreme sensibility. But in the present discussion this is not the true comparison at all.

"The true comparison is with things used in the ordinary enjoyment of property, and this instrument differs from such things in its peculiar liability to be affected by even minute currents of electricity. Now, having regard to the assumptions of the appellants' argument, it seems necessary to point out that the appellants, as licensees to lay their cable in the sea and as owners of the premises in Cape Town where the signals are received, cannot claim higher privileges than other owners of land, and cannot create for themselves, by reason of the peculiarity of their trade apparatus, a higher right to limit the operations of their neighbors than belongs to ordinary owners of land who do not trade with telegraphic cables. If the apparatus of such concerns requires special protection against the operations of their neighbors, that must be found in legislation; the remedy at present invoked is an appeal to a common-law principle which applies to much more usual and less special conditions. A man cannot increase the liabilities of his neighbor by applying his own property to special uses, whether for business or pleasure."

In the case of the *Dakota Central Tel. Co. v. Spink County Power Co.*, 42 S. D. 448, 176 N. W. 143, the supreme court of South Dakota sustained the rule of

liability by reason of the particular statute of that state, but indicated that if there had been no legislative direction either way the court would adopt the view that there was no liability.

The respondent cites and quotes quite extensively in support of his position from Deiser on the Law of Conflicting Uses of Electricity and Electrolysis. When the text relied on is carefully read in the light of the authorities cited in the foot notes, it is plain that the author, in the paragraphs cited, was referring to conductive instead of inductive interference, or to cases where there was something in the construction, maintenance and operation of the power line that could be corrected and thus obviate the disturbance. If this is not the correct view, then the author necessarily takes inconsistent positions, because, in the paragraph above quoted, he expressly, in summarizing the principles, states the rule to be one of nonliability. In *Cumberland Tel. & Tel. Co. v. United Electric Ry. Co.*, 93 Tenn. 492, 29 S. W. 104, 27 L. R. A. 236, the supreme court of Tennessee adopted a rule of liability whether for conduction or induction, basing its holding on the conclusion that, while there was not any damage to property, an interference with the use thereof was sufficient, in the opinion of the court, to sustain the action. There is another line of cases holding nonliability which are cited in the appellant's brief, but which do not seem to us to be in point. They are cases where the current used by a street car line in a city interferes with a telephone line upon the same street, and they are based upon the theory that the primary use of the street is being promoted by the use of electricity for propelling street cars, and that the use of the street for a telephone line is a subordinate use.

While the precise question has not been considered by many courts or text writers, we are inclined to adopt

the rule of nonliability. The telephone company, in order to maintain its single wire system, must make use of the earth, in which it has no rights, for the completion of its return circuit. It does not seem reasonable to hold that the duty was not upon it to standardize its line in a way that would prevent interference in accordance with good modern engineering practice, when to maintain a single line it must make use of something which it does not own.

It is suggested that, since the telephone company was first upon the highway, it has a superior right. But this position cannot be sustained. The statute, Rem. Compiled Statutes, § 6431, provides that no exclusive franchise or privilege shall be granted. The authorities are against the rule of superior right based upon priority. *Hudson River Tel. Co. v. Watervliet Turnpike & R. Co.*, 135 N. Y. 393, 32 N. E. 148, 31 Am. St. 838, 17 L. R. A. 674; *Cincinnati Inclined Plane Ry. Co. v. Telegraph Ass'n*, 48 Ohio St. 390, 27 N. E. 890, 29 Am. St. 559, 12 L. R. A. 534; *Lake Shore & M. S. R. Co. v. Chicago, L. S. & S. B. R. Co.*, 48 Ind. App. 584, 92 N. E. 989, 95 N. E. 596. The prior occupant, as stated in Joyce on Electric Law, vol. 1 (2d ed.), § 372a,

"while it obtains no exclusive right to the occupation of the street, does acquire a right, which is in the nature of an exclusive one, to the continued occupation of the space occupied by its poles and wires, subject to the proper control by the state or municipal authorities, and this right must be recognized by the subsequent company in the construction of its line."

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.

### ON REHEARING.

[*En Banc.*   January 2, 1923.]

PER CURIAM.—After the opinion of the Department in this case was filed a petition for re-hearing was presented and granted. Subsequently, the case was re-argued *En Banc.* The statement in the opinion of the department to the effect that priority in time does not give a superior right, seems to have caused some alarm. Let it be said that this statement must be read and understood as applying only to the facts of the particular case. That this was the meaning of the Department opinion seems to be made plain by the quotation from Joyce on Electrical Law which immediately follows the statement in the opinion complained of. It was not the intention of the court to make a statement of the law which was out of harmony with that quoted from this author. With this modification, or interpretation, as it may be called, the opinion of the Department is adhered to; and for the reasons there stated, the judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.