Argued March 26, reversed and remanded April 22, 1924.

YAMHILL COUNTY MUTUAL TELEPHONE CO. *v.* YAMHILL ELECTRIC COMPANY.

(224 Pac. 1081.)

**Electricity—Lines of Different Companies Should be Placed on Opposite Sides of Highway.**

1. Under Section 6005, Or. L., as amended by Laws of 1923, page 154, giving County Courts authority to designate the location of electric lines along highways, if two such companies desire to use the highway for lines they should be placed on opposite sides thereof.

Electricity—Rights as Between Holders of Franchises Stated.

2.   The holder of a prior franchise has no exclusive right to the use of a street, and, so long as it is not disturbed in its occupancy, it must submit to such unavoidable and incidental inconveniences as may result from a fair and reasonable exercise of subsequent licensee's franchise, but it has a superior right to the extent that the subsequent licensee is under the duty to so construct its system as not unnecessarily to interfere with the prior licensee.

Electricity—Power Company Held not Liable for Inductive Interference With Telephone Lines.

3.   A power company, lawfully maintaining a high-tension line along a highway, constructed according to the best and most modern methods, so as to interfere with the operation of a previously constructed telephone line which it paralleled as little as possible, is not liable for inductive interference with the telephone system or for the cost of metallicizing the telephone line or constructing some device to prevent such interference.

Electricity—Duty of Power Company to Prevent Interference With Telephone Lines by Conduction.

4.   A power company, which connects its new high-tension line with an old dilapidated line with a grounded system, which allows the electricity to escape through the ground and interfere with a previously constructed telephone system by conduction, must eliminate the interference by proper construction and maintenance of its power line; the rule applicable to "conduction" being more strict than to "induction" because the interference by the former can be practically eliminated.

Injunction—Remedy at Law for Conductive Interference of Power Line With Telephone Lines Held Inadequate.

5.   A suit to enjoin the construction and operation of a high tension power line paralleling a telephone line, without taking precautions against interference by conduction, may be maintained in equity because the remedy at law would be inadequate.

From Yamhill: H. H. BELT, Judge.

Department 2.

This is a suit to enjoin the defendant Electric Company from constructing and operating a power line carrying 11,000 volts of electricity along and paralleling plaintiff's telephone line, along the Dayton-Amity County road for a distance of four and one-half miles.

4.   Induction, conduction and electrolysis, see notes in Ann. Cas. 1916A, 135; Ann. Cas. 1916E, 199.

so as to interfere with plaintiff's telephone line and system.

Plaintiff filed an amended complaint to which the defendant demurred upon the grounds (1) that plaintiff had an adequate remedy at law; (2) that the complaint did not state facts sufficient to constitute a cause of suit. The trial court sustained the demurrer and plaintiff refused to plead further. A decree was entered dismissing the suit from which plaintiff appeals.

The gist of plaintiff's complaint, after alleging the corporate character of the plaintiff, and of the defendant, is that plaintiff for a long time past has, and now owns and operates a telephone line on a certain county road from Dayton in Yamhill County, Oregon, to Amity, in the same county, for a distance of four and one-half miles, connected with its switchboard at Dayton. It operates telephone lines connected with its switchboard consisting of about 90 miles of telephone wire connecting 260 patrons; that its telephone lines have a return circuit with the ground, or a grounded system; that the defendant Electric Company, in utter disregard of plaintiff's rights to operate its telephone system, is constructing a power line along said Dayton-Amity County road paralleling plaintiff's telephone line, and wrongfully and unlawfully so constructing it as to transmit over defendant's wires a current of 11,000 volts of electricity along plaintiff's telephone line; that defendant intends to construct its electric line and transmit said current of electricity over the same, to and connecting with an electric line at Amity, Oregon, and then avers:

"That said electric line at Amity which defendant proposes to connect its said electric line along said road is in poor condition, has contacts with the ground

and allows electricity to escape through the ground and is within two miles of plaintiff's telephone line and defendant intends and will wrongfully and unlawfully and without regard to the injury such connection would do to plaintiff, turn on said 11,000 volts of electricity into said Amity line and electricity will escape into the ground and be communicated and transmitted through the ground to plaintiff's telephone system thereby causing a loud buzzing sound over the telephone wires and in the telephones to such an extent as to make it impossible to hear or understand a human voice over plaintiff's said telephone line or any of its telephone lines to plaintiff's irreparable injury."

That the location and carrying of the heavy voltage of electricity over said electric line in such proximity to plaintiff's telephone line paralleling and crossing the same will cause the electric current to be carried by induction into plaintiff's telephone wires causing a loud buzzing noise, rendering it impossible to hear the human voice over said telephone system, making it impossible for plaintiff to use its telephone line to plaintiff's irreparable injury.

That there are in Yamhill County between Dayton and Amity other county roads and ways of equal distance over which defendant could construct its electric line with equal expense and without interference or injury to plaintiff's telephone line and system.

REVERSED AND REMANDED.

For appellant there was a brief and oral argument by *Mr. Frank Holmes.*

For respondent there was a brief over the names of *Mr. Clarence Butt* and *Messrs. Vinton & Tooze,* with oral arguments by *Mr. Walter L. Tooze, Jr.,* and *Mr. Butt.*

BEAN, J.—There are two reasons asserted by plaintiff in its complaint against the operating of defendant's power line. First, plaintiff asserts that the force of electricity carried over the power line will be such that its consequent magnetic field will envelop the telephone wires causing the telephone wires to receive such electricity by induction.

The second is that the power company intends to and will connect its line with an old power line in Amity which is in poor condition and has contacts with the ground, and these conditions will cause electricity to be communicated to appellant's telephone line through the ground by conduction, either of which will cause the interference mentioned.

Defendant claims that the telephone company has no right to complain, and if it has, it has a remedy at law. Plaintiff asserts that before the Power Company can convey this high power of electricity in a manner so as to interfere with the telephone lines it must construct its lines in a manner so as to relieve the interference, if it is possible to do so.

1, 2. As to the jurisdiction of a court of equity in the premises the general rule is stated in 9 R. C. L. 1194, Section 9, as follows:

"As between two electric corporations exercising similar franchises upon the same streets, priority carries superiority of right. This does not, however, mean that priority in grant carries with it the exclusive right in the use of the streets, but merely protects the first company in its occupation of the streets with its poles and wires. Equity will adjust the conflicting interests as far as possible and control both so that each company may exercise its own franchises as fully as is compatible with the necessary exercise of the other's. But if interference and limitation of one or the other are unavoidable, the latter must give

way, and it has been held that the fact that it is under contract with the city for work of a public nature does not alter its position or give it any claim to preference.''

The rights of the respective parties to use the highway are measured by Section 6005, Or. L. (amended Laws 1923, p. 154), which grants the privilege to construct, maintain and operate telegraph lines, telephone lines and lines and wires for the purpose of conveying electric power or electricity along the public roads, highways and streets of the state, and to erect necessary fixtures therefor; except in incorporated cities or towns; the County Courts have authority to designate the location upon, such roads and highways of such fixtures of telegraph or telephone lines. If two such companies desire to use the street or highway for lines, they should be placed on opposite sides thereof: Curtis on Law of Electricity, § 362.

As to conflicting franchises and operations it is said in effect that while an electric company occupying the streets under its franchise has no exclusive right of occupancy against a subsequent licensee thereof, yet as between electric companies exercising similar franchises in the same street or highway priority of franchise and occupancy carries with it superiority of right to the extent that the subsequent licensee is under the duty so to construct its system as not unnecessarily to interfere with the prior licensee in the exercise of its franchise. To this extent a company that first obtains a franchise and occupies a highway thereunder acquires the right not to be substantially molested in its possession, and an injunction may issue not only against wanton or negligent damage by the holder of the later franchise, but against all interference which is not strictly unavoidable, without

regard to the extra cost imposed on the junior licensee. The rights of the first licensee are not exclusive. So long as it is not disturbed in its occupancy it must submit to such unavoidable inconvenience as may result from a fair and reasonable exercise of the junior licensee's franchise. Damages which are merely a natural incident to and the direct and immediate result of the junior licensee's operations are not actionable, and such operations will not be enjoined. If the interference is not merely incidental to the lawful operations of the junior licensee, but consists of misconduct in the nature of an abuse of franchise it may be enjoined and damages may be recovered, for injuries to one electric line resulting from negligence in the maintenance of another. In case the interference may be avoided by the installation of devices or other means it is the duty of the later company to adopt such means; provided the interference is not merely incidental to the later company's operations. The junior licensee is not bound to experiment with recent inventions not generally known; the practicability and expense of safe methods of overcoming the interference must be considered with reference to the fact that the science of electricity is still in its experimental stage and with the possibility that the legal objections of the parties may change with the progress of invention: 20 C. J. 314, § 18.

In a note to *Phillippay* v. *Pacific P. & L. Co.*, 23 A. L. R., at page 1259, we are informed that the weight of authority on the question of "induction" or the flow of electricity from one wire to another without actual contact, through the medium of the atmosphere, preponderates in favor of the rule of nonliability. It has been held that a railroad company which has

constructed a telegraph and signal system on its right of way is not entitled to an injunction against a street railway to prevent its use of wires carrying high voltage which by induction interfere with the telegraph line, notwithstanding it was first constructed, where the street railway has not been guilty of negligence.    In *Lake Shore & M. S. R. Co.* v. *Chicago, L. S. & S. B. R. Co.* (1911), 48 Ind. App. 584 (92 N. E. 989), the court said:

"This controversy is between users of electricity; appellant using light currents and comparatively delicate instruments, which are interrupted by escaping currents from the wires carrying exceedingly high voltage belonging to the appellee.    It is not a question between one engaged in the ordinary development of his land and the customary and appropriate employment of it, according to its inherent qualities and its surroundings, without bringing upon it artificially any substance not naturally found there (*Evans* v. *Reading Chemical Fertilizing Co.* (1894), 160 Pa. 209 (28 Atl. 702); *Pennsylvania Coal Co.* v. *Sanderson* (1886), 113 Pa. 126 (6 Atl. 453, 57 Am. Rep. 445), and one engaged in the unnatural and extraordinary use of his property, calling for the application of the maxim, '*sic utere tuo,* etc.,' which is the governing principle in *Fletcher* v. *Rylands* (1866), L. R. 1 Exch. (Eng.), 265, 12 Jur. N. S. 603, 14 Week. Rep. 799, 1 Eng. Rul. Cas. 235, affirmed in (1868) L. R. 3 H. L. 330, 37 L. J. Exch. N. S. 161, 19 L. T. N. S. 220, 1 Eng. Rul. Cas. 256, 6 Mor. Min. Rep. 129.    In this case the use of electricity is common to both parties, and both are acting under legislative grants.    In such cases it seems to be the consensus of opinion, both in England and in this country, that where one is acting under legislative authority, and within the right thus given, and reasonably within the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience or incidental damage which may arise in the absence of any negligence from

the reasonable use of his own property will be regarded as within the rule *damnum absque injura."*

In *Postal Teleg.-Cable Co.* v. *Chicago, L. S. & S. B. R. Co.* (1912), 49 Ind. App. 697 (97 N. E. 20), the same view was taken as to the respective rights as to a telegraph or telephone and a street railway company.

In *Citizens' Teleph. Co.* v. *Ft. Wayne & S. R. Co.,* 53 Ind. App. 230 (100 N. E. 309, Ann. Cas. 1916A, 132), the plaintiff company, which had constructed and operated a telephone system in and through the highways of certain cities, sought to recover damages from the defendant company, which had constructed its electric railway in close proximity to the plaintiff's telephone lines, for the interference resulting therefrom with such telephone wires.  This interference was the result of the phenomena known as "conduction" and "induction," and, as a consequence, the plaintiff's wires, which had been made useless, had to be moved a long distance from the place where they were first erected.  Both parties, so it appeared, were using the streets and highways by virtue of franchise and statute, neither one, in the opinion of the court, having a greater right therein than the other.  The court said:

"It cannot be said that the mere fact that appellee conducted its line of railroad with its high-voltage system of electricity necessary to propel its cars in close proximity to appellant's wires, on a public highway, when it might have been constructed elsewhere, would of itself constitute an act of negligence on which appellant could base a cause of action."

It was observed that the courts of the state laid down the rule that there was no liability in cases of the kind, in the absence of negligence.  It was said:

111 Or.—5

"These two paragraphs of the complaint are entirely barren of any averments from which it could be said that there was any negligence either in the construction of appellee's railroad, or in the operation of the same; neither is it made to appear that the construction work was in any manner faulty, or that the various appliances used in operating the cars were in any respect faulty or improper; nor that it is possible or practicable for appellee, by any known suitable equipment, to avoid interference complained of, either from conduction or induction. In the absence of these averments, we again have the right to assume that the road was built in a proper manner, and that it was, at the time complained of, being operated by the most improved method known to modern science and with the highest degree of care."

It was the court's opinion, however, that the tendency of modern opinions was against permitting unnecessary injury to be inflicted without regard for the rights of the injured party.

In *Phillippay* v. *Pacific P & L. Co.*, 120 Wash. 581 (207 Pac. 957, 211 Pac. 872, 23 A. L. R. 1251), the question was, whether an electric power company whose wires paralleled those of a telephone company, was under an obligation to bear the expense of metallicizing the telephone line in order to restore it to usefulness, the transmission line of the power company having interfered therewith by "induction." The court pointed out that in making use of the earth for its return current, the telephone company was making use of something which it did not own and as a consequence it is held that the duty rested on it to equip its line so as to prevent interference therewith. The rules contained in the note in 23 A. L. R. have not, however, passed unchallenged: See *Cumberland Teleg. & Teleph. Co.* v. *United Electric R. Co.*, 93 Tenn. 492 (29 S. W. 104, 27 L. R. A. 236); *Paris*

*Electric Light & R. Co.* v. *S. W. Teleg. & Teleph. Co.*
(Tex. Civ. App.), 27 S. W. 902; also *Bell Teleph. Co.*
v. *Belleville El. Light Co.,* 12 Ont. Rep. 571. The
principle is thus stated by Mr. Justice WOODWORTH in
*Panton* v. *Holland,* 17 Johns. (N. Y.) 92, at page 99:

"On reviewing the cases I am of opinion that
no man is answerable in damages for the reasonable
exercise of a right, when it is accompanied by a cau-
tious regard for the rights of others, when there is
no just ground for the charge of negligence or unskill-
fulness, and when the act is not done maliciously."

In *Cumberland Teleph. & Teleg. Co.* v. *United El.
R. R.,* 12 L. R. A. 514, at page 550, it is stated:

"The substance of all the cases we have met within
our examination of this question—and we have cited
but a small fraction of them—is that, where a person
is making lawful use of his own property, or of a
public franchise, in such a manner as to occasion in-
jury to another, the question of his liability will de-
pend upon the fact whether he has made use of the
means which, in the progress of science and improve-
ment, have been shown by experience to be the best;
but he is not bound to experiment with recent inven-
tions, not generally known, or to adopt expensive
devices, when it lies in the power of the person in-
jured to make use himself of an effective and inexpen-
sive method of prevention. *Hoyt* v. *Jeffers,* 30 Mich.
181."

In Curtis' Law of Electricity, 535, note 77, we read:

"*Western Union Teleg. Co.* v. *Syracuse Elec. L.
& P. Co.,* 178 N. Y. 325 (70 N. E. 866), wherein it
was said: 'All that the plaintiff can lawfully demand
is that its structure shall not be unreasonably inter-
fered with. This is involved in the terms of its grant,
when construed in the light of all the facts. It can-
not keep out other structures, even if their construc-
tion involves expense and inconvenience to itself. It
cannot say there shall be no subway above, beneath

or on either side of its own. * * The city cannot destroy the plaintiff's line nor prevent reasonable access to it, but it is not obliged to consult the mere convenience of the plaintiff, nor study to save it from expense to the detriment of the public. In other words, the plaintiff may make a reasonable, but not an unreasonable, use of the right granted. While the city could not grant to another the right to use the same space occupied by the plaintiff's line, it could authorize the use of any other space, provided access ǀto the line was left open, even if it was less convenient and more expensive.''

Where one company is operating a low-tension wire, like the plaintiff's, and another is maintaining a high-tension wire, like that which the defendant is proposing to construct in the same locality, the plan evolved by the law seems to be ''live and let live.'' Each company should do its part to prevent unnecessary friction in the working of the two lines.

3. From the illumination of the contents of the several books, some of which we have referred to, we draw the conclusion that the plaintiff Telephone Company, as the senior occupant on the county highway, has no exclusive privilege thereon or monopoly therein: 20 C. J. 313, § 16. In so far as asserted in the complaint, the defendant Electric Company is proceeding to construct its power line along the highway in accordance with the best and most modern methods so as to interfere with the operation of the plaintiff's telephone line as little as possible, or only incidentally; no unreasonable nor unnecessary interference with the telephone line by the construction of the new power line along the county road is indicated by the allegations of the complaint. There will of necessity be some interference with the telephone system caused by induction. Such interference should be minimized as much as possible. The Power Com-

pany should disturb the business of the Telephone Company only to the extent which is strictly and unavoidably necessary. It is not averred by plaintiff that the defendant in construing its new line, intended to act either negligently or wantonly. In the light of the facts set forth in the complaint we cannot hold that the defendant company should metallicize the plaintiff's old telephone line, or construct some device in connection therewith to lessen the interference complained of. There are valuable suggestions as to how such interference may be lessened in some of the authorities referred to. Thus far we refer to the construction of the new power line and concur with the holding of the learned trial judge.

4. When we consider the question relating to "conduction" as to the precautionary measures "the shoe is on the other foot." Plaintiff says that the defendant will connect its new power line at Amity with an old dilapidated line with a grounded system which allows the electricity to escape through the ground, and turn 11,000 volts of electricity into the Amity line, and electricity will escape into the earth and be transmitted to plaintiff's telephone system, causing a loud buzzing sound over the telephone wires and in the telephones to such an extent as to make it impossible to hear or understand a human voice over the telephone line, and wrongfully injure plaintiff's telephone system.

We can find no authority or excuse for defendant to turn such a quantity of electricity into a line in poor condition with a ground contact, where it will be conducted to plaintiff's telephone system to the injury of plaintiff's property. The defendant ought in equity and good conscience, to bring the old Amity line down to date, as it were, and metallicize it, or

construct some mechanical device to prevent as far as possible, the ''conduction'' of electricity to plaintiff's telephone system. Interference by ''conduction'' may be practically eliminated by the proper erection and maintainance of the power line: 23 A. L. R., note, 1260; *Dakota Cent. Teleph. Co.* v. *Spink Co. P. Co.*, 42 S. D. 448 (176 N. W. 143).

Defendant asserts that the plaintiff should metallicize its telephone line to prevent ''induction'' of electricity along the highway. The Power Company should not complain of the application of some such rule to the Amity power line. Indeed a survey of the authorities will disclose that a stricter rule apparently is applied in relation to ''conduction'' than to ''induction,'' for the reason that interference by conduction can be practically eliminated: See Keasbey on El. Wires, § 214, and Deiser, Law of Confl. Uses of El. 12 et seq., and authorities above cited.

5. On account of this portion of the complaint we think there should be a further investigation. Taking the facts stated in the complaint as true, as we are compelled to do, the plaintiff has just cause to complain in regard to the use of the Amity power line; call it negligence, or call it what you may. Defendant Power Company does not own the ground into which it allows or proposes to allow the electricity to escape and be conducted to plaintiff's telephone system, and it should use all reasonable and approved methods to prevent the same. This feature of the case appears to have been overlooked at the trial. The demurrer to the complaint should not be sustained. It is not intended to lay down a rule for the final adjudication of this suit, if there should be a trial, for the reason that in the meantime science may discover a new invention that would be of assistance in ad-

justing the matter.   The interference referred to can be adjusted in a suit in equity.   The remedy at law would not be adequate.   Should it become necessary the restraining order could be withheld for a sufficient time for the defendants to remedy the defects referred to, or minimize the interference.

The judgment of the Circuit Court is reversed and the cause will be remanded or such further proceedings as may be deemed proper and not inconsistent herewith.                           Reversed and Remanded.

McBride, C. J., and Brown and McCourt, JJ., concur.