JONES COUNTY ELECTRIC POWER ASS'N *v.* ROBINSON.

(Division A.   June 3, 1940.)

[196 So. 510.   No. 34188.]

**Welch & Cooper,** and **F. Holt Montgomery,** all of Laurel, for appellant.

654

F. B. Collins and Jeff Collins, both of Laurel, for appellee.

Argued orally by **Ellis B. Copper** and **F. Holt Montgomery**, for appellant, and by **Jeff Collins**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the Circuit Court of Jones County to recover damages in the sum of $1,000 to a telephone system owned by him which he alleged was negligently damaged by appellant by means of electric induction. The trial resulted in a verdict and judgment for appellee in the sum of $800. From that judgment, appellant prosecutes this appeal.

Appellant assigns and argues as error the refusal of the trial court to direct a verdict in its favor. We are of opinion that this contention is well founded, and reach that conclusion upon the following conclusions: Appellee owns a rural telephone system in Jones County sixty-four miles in length. It connects with the Southern Bell Telephone System at Ellisville in that county. It serves rural communities. Only one wire is used; the circuit is completed through means of the earth. The line was built to a large extent along public highways. It was constructed along rights of way acquired for that purpose. With its one wire and ground circuit, it furnished satisfactory service to its patrons until the construction and operation by appellant of its electrical distribution system which took place several years after the telephone system had been in use.

Appellant is a corporation organized under Chap. 184 of the Laws of 1936, and its system was constructed with the advice and financial aid of the "Rural Electrification Administration." It distributes electricity to homes

schools and churches. It serves a large number of patrons who are also served by appellee's telephone system. For approximately fourteen miles, it parallels the line of the telephone system, the distance between them ranging from something like twelve feet to three hundred feet. Appellant's system carries more than 11,000 volts of electricity. 11,000 volts are commonly used. The telephone line is of low voltage. The result was that appellant's distribution system destroyed and rendered useless the telephone system by induction. Appellee, however, could have avoided that result by the installation of a second wire for the return circuit instead of using the earth for that purpose. There is no defect in appellant's distribution system. It is the approved system commonly in use. On the other hand, the one line telephone system is not in use and cannot be used except when so isolated that its use cannot be interfered with by induction from some other electrical system.

The power association and the telephone system are both public utilities, although the latter is not a corporation but owned by a person. The question is whether the owner of the telephone system preempted the right to occupy the territory, with only one wire and the earth for a circuit, to the exclusion of every other public utility using electricity to the extent that its necessary use will damage the telephone system, when the latter, by the adoption of modern methods—the installation of a second wire for a return conductor instead of the earth—could avoid such damage. Although there is authority to the contrary, we are of opinion that under the better reasoned authorities, that question must be answered in the negative. The leading case on the subject is Phillippay, Receiver v. Pacific Power & Light Company, 120 Wash. 581, 207 P. 957, 211 P. 872, 23 A. L. R. 1251. The headnotes of that case fairly and succinctly state what the court held. They are:

"1. One maintaining under lawful authority a high-tension electric line along a public highway is not liable

to the owners of a previously constructed telephone system rightfully constructed along the highway, for the cost of substituting a metallic return circuit for the earth as formerly used, which is made necessary by induction from the high-power line which interferes with the use of telephone instruments.

"2. Where by statute no exclusive franchise or privilege in a highway can be granted, a telephone company maintaining its system in a highway under license from the proper authorities has no superior right over a power company subsequently constructing its transmitting line in the highway under similar authority."

The annotations to that case, as reported in 23 A. L. R., refer to several authorities sustained that holding. At page 1259 of 23 A. L. R. the annotator uses this language: "The weight of authority on the question of induction appears to be in favor of the rule of non-liability. Thus, it has been held that a railroad company which has constructed a telegraph and signal system on its right of way is not entitled to an injunction against a street railway lawfully operating near the right of way, to prevent its use of wires carrying high voltage, which by induction interfere with the telegraph line, notwithstanding it was first constructed, where the street railway has not been guilty of negligence."

Here is the case in a different form. A telephone company has in operation a one wire system in a municipality. It has been in operation for many years. It answers the public needs. Later, an electric railway company acquires a franchise to establish and operate its cars on the same streets occupied by the telephone system. In its construction and operation, the company uses modern approved instrumentalities and methods. Its operation destroys the telephone system by induction. The telephone company can avoid the damage by installing a second wire. Where does the loss fall? We think on the telephone company. The principle of "Live and let live" applies. If both the power company and the tele-

phone company using approved modern appliances and methods could not occupy the same territory without one destroying the other, that would be a different question.

Appellee contends that the contrary view would violate Section 17 of the Constitution, which prohibits the taking or damaging property for public use except upon due compensation being first made to the owner therefor. We think what has been said above refutes that contention. Putting the principle in different language: Appellee acquired no property right in the continuance of the one wire system. Therefore, the damaging of such a system does not violate that section of the Constitution.

Appellee undertook to prove that the power company could have either prevented or minimized the induction by transposing its lines; that by crossing the telephone wire back and forth every three hundred or four hundred feet, that result would have been accomplished. The evidence showed that such transposing would have been costly to the power company, and, furthermore, of doubtful effect. We are of opinion that the applicable principle here is stated in Deiser on Law of Conflicting Uses of Electricity and Electrolysis, as follows: "Nor can the holder of another franchise such as the telephone, hope to recover the cost of remedying defective apparatus, and any telephone apparatus capable of being disturbed to any marked extent by induction must be classified as defective, so long as there exist insulating or isolating devices, such as the complete metallic circuit, or the non-inductive circuit, that would protect the telephone or telegraph lines."

Reversed and judgment for appellant.