OZARKS RURAL ELECTRIC COOPERATIVE CORPORATION *v.*
OLIPHANT.

4-6055

144 S. W. 2d 41

Opinion delivered October 28, 1940.

*Maupin Cummings,* for appellant.

*H. A. Northcutt, Oscar E. Ellis* and *Greer Nichols,*
*amici curiae.*

GRIFFIN SMITH, C. J. Appellees are owners of nine
miles of rural telephone lines in Washington county of
the so-called "grounded" type of construction wherein
but one wire is used. Because the circuit is not metallic
the system is peculiarly sensitive to interference.[1]

Appellant is a rural electric co-operative corporation
organized under authority of act 342 of 1937.[2] The com-
plaint alleges that its primary lines carrying 7,200 volts

[1] Different types of telephone construction are discussed in *De-
partment of Public Utilities* v. *McConnell,* 198 Ark. 502, 103 S. W.
2d 9.

[2] Pope's Digest, §§ 2315 to 2351.

were ". . . carelessly, negligently, and unlawfully constructed, . . ." and that in consequence appellees' telephone lines were unreasonably interfered with. There was a prayer for $3,000 to compensate damages. Judgment for $100 was rendered on a jury's verdict.

The evidence sustains a finding that the telephone service was interfered with through induction.[3] In other words, electricity escaping from the high-voltage wires at times caused a buzzing sound which rendered telephonic conversation difficult.

The evidence also shows that appellant's wires were constructed according to approved usage. Installation was not defective, nor was lack of maintenance responsible for the annoyance complained of. The facts are that the telephone system is outmoded and that if it were modernized interference would not occur.

Appellants insist that the judgment must be reversed on authority of *Arkansas Valley Co-Operative Rural Electric Company and Roy Wilson* v. *George Elkins*, 200 Ark. 883, 141 S. W. 2d 538. It was held that because assets created by nonprofit sharing corporations are in the nature of trust funds there could be no liability of a co-operative rural electric company for personal injuries sustained by an employee.

It is insisted in the instant case, however, that although the claimed liability grew out of appellant's tortious action, appellees are being deprived of their property without just compensation, and the Elkins Case has no application.

We pretermit a determination of this phase of the controversy because, in the case at bar, appellees did not sustain their allegation of negligence. Hence, there can be no liability and a verdict for the defendant should have been directed.

The situation is this: A telephone company using a one-wire medium is paralleled, and through necessity

[3] The term "induction" describes electrical interference by the flow of current through the atmosphere from one wire to another without actual contact, while the term "conduction" describes the same condition except that the medium of flow of the electricity from one wire to another is the earth, if there is not direct contact.

is occasionally crossed, by appellant's electrically-charged wires. Each has a legal right to use of the highway. Each is within the law insofar as physical construction is concerned. Judicial notice is taken of the fact that the two-wire method of telephone construction eliminates inductive and conductive difficulty, or so far controls it that interference is negligible. There are two approved methods of building electric lines: one the delta plan, the other the wye (or "Y") type. The latter is cheaper and less dangerous, but does occasion contiguous disturbance.

No actual negligence having been shown in the case at bar, it follows that if recovery lies it must be predicated upon appellees' assumed right to operate an antiquated telephone system without being subjected to the necessary inconvenience caused by phenomenae attending operation of a modernly constructed electric system.

No such superior right exists. Public convenience and necessity take precedence. It is obligatory upon owners of telephone lines situated as appellees' are to make use of reasonably available scientific construction before invoking the aid of courts for relief from the normal incidents of rural electrification.

The principle is announced in *Phillippay* v. *Pacific Power & Light Company,* 120 Wash. 581, 207 Pac. 957, 211 P. 872, 23 A. L. R. 1251. A headnote to that case reads: "A power company, lawfully maintaining a high-powered transmission line, constructed according to the best standards of modern engineering, on one side of a highway, is not liable for inductive interference of a telephone line on the other side of the highway, or for the cost of metallicizing the telephone line, so as to prevent such interference, where the telephone line was a single wire system, with a return circuit through the ground, which was not in accordance with the best standards of modern engineering."

To the same effect is *Jones County Electric Power Ass'n* v. *Robinson* (Supreme Court of Mississippi), 196 S. W. 510. A headnote to that case is: "Where, after

telephone system, using only one wire and the earth for a circuit, had been in operation several years, electric company constructed line paralleling line of telephone system and thereby destroyed the utility of the telephone system by induction, although there was no defect in the electric company's system, electric company could not be compelled, on theory that there was damaging of property for public use, to pay cost of providing remedy by installing a second telephone wire for the return circuit."

In Deiser's Law of Conflicting Uses of Electricity and Electrolysis, it is said: ". . . any telephone apparatus capable of being disturbed to any marked extent by induction must be classified as defective, so long as there exist insulating or isolating devices, such as the complete metallic circuit, or the non-inductive circuit, that would protect the telephone or telegraph lines."

Other cases are in accord. There are decisions to the contrary, but the great weight of authority sustains the view here expressed.

Since the rule is that Progress cannot be stayed at the call of Decadence, the judgment must be reversed, and the cause dismissed. It is so ordered.